IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| GARLAND WAYNE BALLENTINE, III, § | | |
|    *Plaintiff*, § | | |
| § | | |
| v. § | CIVIL ACTION NO. 9:18-cv-00119 | |
| § | | |
| BRIAN COLLIER, *et al.*, § | | |
|    *Defendants*. § | | |

**DEFENDANTS COLLIER, BRYANT, DICKERSON, HANSON, AND PICKTHALL'S MOTION TO DISMISS BALLENTINE'S COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND (6)**

Defendants Brian Collier, Stephen Bryant, Robert Kent Dickerson[1], Janice Hanson, and Monica Pickthall (collectively, "Defendants"), through the Attorney General for the State of Texas, file this motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) in response to Plaintiff Ballentine's complaint (ECF No. 1). In support of this motion, Defendants respectfully offer the following.

**STATEMENT OF THE CASE**

Plaintiff Garland Ballentine, an inmate in the custody of the Texas Department of Criminal Justice ("TDCJ") at the Hughes Unit, filed this lawsuit against Defendants on June 27, 2018. ECF No. 1. He claims that Defendants discriminated against him in violation of his Eighth Amendment rights while he was incarcerated at the Gib Lewis Unit. ECF No. 1 at 4. Specifically, Ballentine claims

---

[1] Plaintiff has identified as a defendant Kenneth Kent Dickerson; the actual name of the Practice Manager who responded to Plaintiff's grievances is Robert Kent Dickerson.

that he is entitled to receive direct acting antivirals (DAA) drugs because he has been diagnosed with Hepatitis C. *Id.*; ECF No. 1-1.

On February 5, 2020, this Court ordered Defendants to answer Ballentine's claims. ECF No. 18. Because Defendants have not been deliberately indifferent to Ballentine's medical needs, Defendants now file their motion to dismiss.

## ARGUMENT

### I. DEFENDANTS MOVE TO DISMISS BALLENTINE'S CLAIMS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1).

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States*, 899 F.Supp. 305, 307 (E.D.Tex. 1995). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

### A. Sovereign immunity bars Ballentine's claims for declaratory and injunctive relief against Defendants in their official capacities.

It is not entirely clear from Ballentine's digressive complaint what relief he seeks against whom. However, to the extent he is seeking injunctive and declaratory relief against Defendants Bryant, Dickerson, and Hanson, these claims are barred by sovereign immunity.

### i. Ballentine lacks standing to bring claims for declaratory or injunctive relief against Defendants who are employed at the Gib Lewis Unit because he is housed at the Hughes Unit.

Defendants Bryant, Dickerson, and Hanson are employed at the Gib Lewis Unit, where Ballentine is no longer housed. Accordingly, Ballentine lacks standing for injunctive and declaratory relief against these Defendants due to lack of redressability.

Because Ballentine is now at the Hughes Unit, he has no standing to seek injunctive relief for alleged constitutional violations at the Gib Lewis Unit.

"[S]tanding is perhaps the most important of the jurisdictional doctrines." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (internal quotation omitted). Jurisdiction is "a threshold issue that must be resolved before any federal court reaches the merits of the case before it." *Perez v. U.S.*, 312 F.3d 191, 194 (5th Cir. 2002); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).

To establish standing, a plaintiff must show: (1) an actual or imminent, concrete and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant (causation); and (3) that is likely to be redressed by a favorable decision (redressability). *Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). All three elements are "an indispensable part of the plaintiff's case" and the party seeking to invoke federal jurisdiction bears the burden to establish them. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The Gib Lewis Defendants have no involvement with medical practices at the Hughes Unit. Because Ballentine is no longer at the Gib Lewis Unit, he does not have an alleged injury that is likely to be redressed by a favorable decision

against the Gib Lewis Defendants—Dickerson, Hanson, and Bryant—and, thus, he is not entitled to injunctive or declaratory relief against them.

ii. **The *Ex parte Young* exception does not apply.**

Additionally, because the *Ex parte Young* exception to Eleventh Amendment sovereign immunity does not apply to this case, Plaintiff's claims for injunctive relief must fail. In *Ex parte Young*, the Supreme Court established an exception to the Eleventh Amendment bar on claims for monetary damages brought against individual state officers in their official capacities. 209 U.S. 123 (1908). Under *Ex parte Young*, a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law." *Mayfield v. Texas Dept. of Criminal Justice*, 529 F.3d 599, 604 (5th Cir. 2008) (quoting *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir., 2004)). Pursuant to the *Ex parte Young* doctrine, a state official who attempts to enforce an unconstitutional law loses the protections provided by the Eleventh Amendment and becomes subject to suit. *NiGen Biotech v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015). Therefore, "[i]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Fontenot v. McCraw*, 777 F.3d 741,

752 (5th Cir. 2015) (quoting *Verizon Md. Inc. v. Pub. Svc. Comm'n*, 535 U.S. 635, 645 (2002)).

Ballentine fails to establish that the *Ex parte Young* exception applies to the Gib Lewis Defendants because he cannot allege an ongoing violation of federal law; nor can he show that the relief he seeks against these Defendants is prospective in nature. As stated above, Ballentine seeks injunctive relief against the Gib Lewis Defendants, but he is no longer at that unit. *See* ECF No. 1 at 9. Because Ballentine is now at the Hughes Unit, he cannot allege an ongoing violation of his constitutional rights by, or entitlement to *prospective* relief against, employees at the Gib Lewis Unit. Accordingly, any claims for injunctive or declaratory relief against these defendants must fail.

### iii. All Defendants lack the ability to redress the alleged constitutional violations.

Article III of the Constitution confines the judicial power of federal courts to deciding actual "cases" or "controversies." U.S. Const. art. III § 2. An essential aspect of the "case or controversy" requirement of Article III is that a plaintiff must demonstrate "standing" to do so, which requires the litigant to prove that his injury is likely to be redressed by a favorable judicial decision. *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). Ballentine seeks an injunction requiring Defendants to alter the Hepatitis C treatment protocol to require treatment using DAA medication. ECF No. 1 at 9; ECF No 1-1. None of the requested prospective relief is within the statutory authority of Defendants, even in their official capacities. TEX. GOV'T CODE § 501.131–.156.

Medical policies and procedures are created and implemented by the Correctional Managed Health Care Committee ("CMHCC"). *Id.* The CMHCC is a statutorily-created committee made up of members employed by TDCJ, the University of Texas Medical Branch ("UTMB"), Texas Tech University Health Sciences Center ("TTUHSC"), employees of other medical schools, and members of the public who are appointed by the governor. *Id.* at § 501.133. Members serve without compensation. *Id.* at § 501.141. The expenditures of the CMHCC come from TDCJ's budget, which is appropriated by the legislature. *Id.* at § 501.142. The CMHCC provides expertise to TDCJ and assists TDCJ in developing policies and procedures. *Id.* at § 501.146(c).

Defendants are not committee members on the CMHCC, nor does Ballentine allege any of them are. Thus, they have no authority to order, fund, or require that offenders be given a particular type of Hepatitis C medication within a certain period of time. *Id.* Nor do Defendants have authority to effect unit-specific policies, particularly those that override CMHC policies. *Id.* at § 501.146 (describing the role of CMHCC in developing the state-wide health care plan for all incarcerated felons).

Ballentine has no standing to request injunctive relief because even if the Court were to grant it, Defendants would not have the authority to effectuate it. *See Summers v. Earth Island Institute*, 555 U.S. 488 (2009) (concluding that to have Article III standing to seek injunctive relief, a plaintiff must show that it is likely that a favorable judicial decision will redress the injury). The Fifth Circuit has ruled that a state official cannot be enjoined to act in any way that is beyond his

authority to act in the first place. *Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir. 2001).

An injunction in this case could not extend so far as to direct Defendants to create or change a policy. In *Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004), the Mississippi prison system appealed an injunction that, among other mandates, directed the prison to put a general preventative maintenance schedule and program into a written policy. *Id.* at 336. The Fifth Circuit observed that although "federal courts can certainly enter injunctions to prevent Eighth Amendment violations, they are not to micromanage state prisons." *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 562 (1979)). The Fifth Circuit vacated the portion of the *Gates* injunction that ordered the prison to put a written policy in place, stating that while the district court could enjoin or mandate conduct, it could not order the agency to write a policy. *Id.* at 338–39.

The alleged continuing constitutional violation Ballentine claims he is suffering cannot be redressed by an injunction against these Defendants. The requested injunction would not affect Defendants' conduct. Ballentine, therefore, fails to establish the element of redressability as to Defendants, which is a necessary element to establish a case or controversy. *Okpalobi*, 244 F.3d at 425–27.

**B. Sovereign immunity bars Ballentine's Section 1983 suit for monetary damages against Defendants in their official capacities.**

Once again, although Ballentine's complaint is less than clear on the matter, to the extent that Ballentine seeks monetary damages under the Eighth Amendment against Defendants in their official capacities, these claims, too, must fail.

A suit for damages against a state official in his or her official capacity is no different than a suit against the State itself. *Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989). Neither a State nor its officials are "persons" under 42 U.S.C. § 1983. *Id.* The Eleventh Amendment bar against monetary damages in federal court remains in effect when state officials are sued for damages in their official capacity. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). This Court lacks jurisdiction to hear the instant case against Defendants in their official capacities for monetary damages because the Eleventh Amendment bars claims for money damages against government officials sued in their official capacity.

## II. DEFENDANTS MOVE TO DISMISS BALLENTINE'S CLAIMS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6).

A defendant is entitled to dismissal under Rule 12(b)(6) of the Federal Rules when the plaintiff fails to state a claim upon which relief can be granted. Dismissal is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied, 536 U.S. 960 (2002). "[T]he plaintiff's complaint [must] be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged." *Id.* (*citing Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989)). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While the Court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff, it need not accept plaintiff's *legal conclusions* as true.

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (emphasis added). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *Id.*

Even assuming the facts alleged in Ballentine's complaint are true, Ballentine fails to state a claim for relief under the Eighth Amendment and this Court should dismiss his lawsuit with prejudice.

### A. Ballentine alleges no personal involvement by Defendants Collier, Bryant, Dickerson, or Hanson.

To hold someone liable under 42 U.S.C. § 1983, an inmate must show that the defendant was personally involved in the alleged constitutional violation. Personal involvement in an alleged constitutional deprivation is an essential element to a civil rights cause of action. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). In order to successfully plead a cause of action in a civil rights case, a plaintiff must enunciate a set of facts that illustrate each defendant's participation in the alleged wrongdoing. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986).

Under § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987). To be held liable for a policy, a supervisor who is not personally involved, nor has any causal connection to the constitutional violation, must implement a policy which

is "so *deficient* that the policy itself is a *repudiation* of constitutional rights and is the *moving force* of the constitutional violation." *Id.* at 304 (emphasis added).

Ballentine fails to allege any personal involvement or causal connection by Defendants Collier, Bryant, Dickerson, or Hanson with respect to his medical care. He only claims that the Defendants should be liable by virtue of their titles. Defendants' supervisory roles do not amount to a constitutional violation. Alleged failures that are based on conclusory allegations do not meet the necessary threshold for a § 1983 violation. *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992) ("A § 1983 plaintiff must plead specific facts with sufficient particularity to meet all the elements of recovery."). Therefore, all claims against Defendants Collier, Bryant, Dickerson, and Hanson should be dismissed.

**B. Ballentine has failed to state a claim against all Defendants because the Eighth Amendment to the United States Constitution is not a medical malpractice statute.**

It is black-letter law that "[d]isagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Gibson v. Collier*, 920 F.3d 212, 220 (5th Cir. 2019) (quoting *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). To repeat, Ballentine's complaint is that he wants DAA medication now, not the monitoring, testing, and prioritizing he currently receives. *See* ECF No. 1-1. However, Ballentine does not claim that a universal consensus of medical opinion rejects the kind of monitoring, treating, and prioritizing practices currently followed in the Texas prison system. *See Gibson*, 920 F.3d 221 (rejecting a claim of

deliberate indifference where plaintiff could not show "consensus in the medical community about the necessity and efficacy of a particular course of treatment").

Put plainly, even taking Ballentine's claims as true for purposes of evaluating this motion, recent federal cases illustrate the point that alleging a provider failed to follow a standard of care does not transform an Eighth Amendment claim from implausible to plausible. *See id*; *see also Allen v. Johnson*, 194 Fed. App'x 204, 205 (5th Cir. 2006) (Explaining that, although several Texas offenders "argue[d] that the defendants have failed to comply with the accepted standard of care...[they] fail to show that the defendants have been deliberately indifferent, however, because *their disagreement with their specific courses of treatment* is insufficient to establish deliberate indifference."); *see also Whiting v. Kelly*, 255 Fed. App'x 896, 899 (5th Cir. 2007) ("[The offenders] contend that the policy created and adopted by the Texas Department of Criminal Justice does not comport with the accepted standard of care for treatment of HCV. Although they clearly believe that they should undergo additional testing and drug therapies, such disagreement does not give rise to a constitutional claim."); *Woodcock v. Correct Care Sols., LLC*, 3:16-CV-00096-GFVT, 2020 WL 556391, at *5 (E.D. Ky. Feb. 4, 2020) (internal citations and quotations omitted) ("the AASLD/IDSA Guideline can be relied upon, but...its recommendations are a source to gain helpful understanding of the best possible practice,...but do not necessarily determine the standard for judging constitutional deliberate indifference.")

Finally, the Fifth Circuit and district courts have addressed CMHCC policies in several recent decisions and determined that claims materially indistinguishable from Ballentine's claims in this suit failed to demonstrate a constitutional violation. *See Grumbles v. Livingston*, 706 F. App'x 818, 818-20 (5th Cir. 2017); *Hendrix v. Lloyd Aschberger,P.A.*, 689 F. App'x 250 (5th Cir. 2017); *see also Hood v. Collier*, CV 3:18-0295, 2019 WL 3412440 (S.D. Tex. July 29, 2019); *Vasquez v. Morgan*, CV H-18-3978, 2019 WL 2393428 (S.D. Tex. June 6, 2019); *Crow v. Mbugua*, CV H-17-1923, 2018 WL 5847410 (S.D. Tex. Nov. 8, 2018); *Burling v. Jones*, CV H–16–0868, 2017 WL 384364 (S.D. Tex. Jan. 24, 2017); *Jones v. UT Medical Branch*, 6:14cv58, 2015 WL 2125165 (E.D. Tex., February 19, 2015), Report adopted at 2015 WL 2169535 (E.D.Tex., May 5, 2015, appeal dismissed) (inmate had no constitutional right to treatment with DAA medication). Under Fifth Circuit standards, Ballentine's disagreement with the decision[2] to monitor rather than provide DAA medication, based on the results of medical testing, is plainly insufficient to state an Eighth Amendment violation. *See Gobert*, 463 F.3d at 346.

---

[2] Ballentine's complaint contains no allegations that indicate what unconstitutional actions Dickerson, a practice manager, has taken in relation to treatment for his Hepatitis C. *See generally* ECF No. 1. The Fifth Circuit has recognized that practice managers have no authority to diagnose medical conditions or render treatment. *Cooper v. Johnson*, 353 Fed. App'x 965, 968 (5th Cir. 2009). Instead, the role of practice manager is to "review the medical record and explain application of the UTMB-CMHC's policies to inmates." *Id*. The Fifth Circuit has previously upheld this Court's dismissal of claims against a TDCJ practice manager with the explanation that she did not have any role to play in providing medical treatment. *Criollo v. Milton*, 414 Fed.App'x 719, 721 (5th Cir. 2011). The same result should occur for Dickerson here.

## C. All Defendants are entitled to qualified immunity from Ballentine's claims against them in their individual capacities.

Although qualified immunity is an affirmative defense, a Court may dismiss a claim at the pleading stage if the applicability of the defense is apparent from the face of the pleadings. *Kansa Reinsurance Co., Ltd. v. Congressional Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994). Qualified immunity shields "government officials performing discretionary functions" from civil liability for claims under federal law "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kinney v. Weaver*, 367 F.3d 337, 349 (5th Cir. 2004) (en banc) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[Q]ualified immunity constitutes an '*immunity from suit* rather than a mere defense to liability.'" *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, (1985)). Accordingly, "[q]ualified immunity questions should be resolved 'at the earliest possible stage in litigation,'" usually before discovery. *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)); *see also Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (citing cases in which this instruction has been given). Resolving the applicability of qualified immunity as early as possible serves to protect officials not only from unwarranted liability but also from "costly, time-consuming, and intrusive" pre-trial discovery. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

Ballentine's suit against Defendants in their individual capacities does not overcome their entitlement to qualified immunity. Government employees sued in

their individual capacities are presumptively entitled to the defense of qualified immunity. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992).

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). A plaintiff fails to satisfy his burden with conclusory allegations of wrongdoing. *Geter v. Fortenberry*, 849 F.2d 1550, 1553 (5th Cir. 1988). In determining whether the plaintiff has successfully overcome the qualified immunity defense, the court must first determine if the plaintiff has alleged the violation of any constitutional right. *Siegert v. Gilley*, 500 U.S. 226, 232-34 (1991). If the plaintiff has not done so, the court need not further address the question of qualified immunity. If the plaintiff has, court must then determine whether the right was clearly established at the time the conduct occurred. *Id*.

Next, if the court finds that the plaintiff has alleged the violation of a clearly established constitutional right, the court must determine if the defendant's action was "objectively reasonable." *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. 1993). For this determination, the court looks to whether the defendant's action was objectively reasonable, "assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639-640 (1987); *Spann*, 987 F.2d at 1114.

As set above, Ballentine has not cleared the first hurdle as he fails to state any cognizable claim under 42 U.S.C. § 1983, and thus, Defendants' entitlement to qualified immunity remains intact. Even assuming, *arguendo*, that Defendants'

actions could somehow be construed as a constitutional violation (first prong), they are still entitled to qualified immunity as they acted objectively reasonably, to the extent they acted at all, in either exercising independent medical judgment in treating Ballentine's Hepatitis C (Defendants Pickthall and Hanson) or leaving the treatment of his medical conditions to his medical providers (all other defendants).

Ballentine has failed to state a claim that any of these Defendants violated any of his constitutional rights. Therefore, Defendants are entitled to qualified immunity and Ballentine's claims against them should be dismissed.

## Conclusion

For all the foregoing reasons, Defendants respectfully request this Court dismiss Ballentine's claims against them with prejudice.

Respectfully Submitted.

**Ken Paxton**
Attorney General of Texas

**Jeffrey C. Mateer**
First Assistant Attorney General

**Darren L. McCarty**
Deputy Attorney General for Civil Litigation

**Shanna E. Molinare**
Division Chief, Law Enforcement Defense Division

/s/ Amy L. Prasad
**AMY L. PRASAD**
Assistant Attorney General
Attorney-In-Charge
State Bar No. 24037295
Amy.Prasad@oag.texas.gov

Office Of The Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2080/ Fax: (512) 936-2109

**Attorneys for Defendants**

## NOTICE OF ELECTRONIC FILING

I, **AMY L. PRASAD**, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing in accordance with the Electronic Case Files system of the Eastern District of Texas, on April 7, 2020.

/s/ Amy L. Prasad
**AMY L. PRASAD**
Assistant Attorney General

## CERTIFICATE OF SERVICE

I, **AMY L. PRASAD**, Assistant Attorney General of Texas, certify that a true copy of the foregoing has been served by placing same in the United States Mail, postage prepaid, on April 7, 2020, addressed to:

Garland Wayne Ballentine, TDCJ No. 1567826
Hughes Unit
3201 FM 929
Gatesville, TX 76597
*Plaintiff Pro se*

/s/ Amy L. Prasad
**AMY L. PRASAD**
Assistant Attorney General